IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIA ASSOCIATION OF BAY AREA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>Defendants. | Case No. 11-1369 SC<br><br>ORDER GRANTING PLAINTIFFS'<br>MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

Plaintiffs in this case are a Muslim mosque, Shia Association of the Bay Area ("SABA"); its Imam, Dr. Nabi Raza Mir ("Mir"); Mir's wife, Syeda Gulshan Zahera ("Zahera"); and the couple's five sons, ages three, five, seven, sixteen, and seventeen. Mir came to the United States from India over ten years ago, at the invitation of SABA, and his wife and sons soon followed.[1] Since 2002, Mir has served as SABA sole minister. Since 2005, Plaintiffs have been trying to convert Mir and his family's temporary visa status to permanent residence. Mir and his family entered the United States

---

[1] Mir's three youngest sons were born in the United States and are now United States citizens.

legally and there is no indication that they are a threat to national security, have broken any laws, or have been anything but diligent in pursuing their various immigration petitions. However, Plaintiffs' petitions have been denied and delayed at every turn by the Department of Homeland Security ("DHS"). In 2008, DHS denied Plaintiffs' application for a special immigrant religious worker visa based on regulations which had been changed while Plaintiffs' application was pending on appeal to the Administrative Appeals Office ("AAO").

In December 2010, Mir, Zahera, and their three youngest sons left the United States -- in possession of valid travel documents -- to visit Mir's ill mother in India. Several days later, Defendants effectively trapped Mir and Zahera outside of the United States by revoking their travel documents. When Mir and Zahera returned to the United States, pursuant to a stipulation between the parties, they were placed into removal (i.e., deportation) proceedings. Plaintiffs filed this action, alleging various constitutional and statutory violations.

Now before the Court are cross-motions for summary judgment filed by Plaintiffs and Defendants United States of America; Janet Napolitano, Secretary of Homeland Security; Alejandro Mayorkas, Director of the United States Citizenship and Immigration Service ("USCIS"); Rosemary L. Melville, Director of USCIS California Service Center; Eric Holder, Attorney General; Hillary Clinton, Secretary of State; Perry Rhew, Director of USCIS Administrative Appeals; and David Aguilar, Deputy Commissioner, United States Customs and Border Protection. ECF Nos. 24 ("Pls.' MSJ"); 25 ("Defs.' MSJ"). These motions are fully briefed. ECF Nos. 26

2

("Pls.' Reply"); 29 ("Defs.' Reply"). Pursuant to Civil Local Rule 7-1(b), the Court finds the motions suitable for determination without oral argument. For the following reasons, the Court GRANTS summary judgment in favor of Plaintiffs.

## II. BACKGROUND

### A. Legal Framework

In light of the complexity of United States immigration law, the Court first reviews the statutes and regulations central to the resolution of this case. Under the Immigration and Nationality Act ("INA"), up to 5000 special immigrant visas may be granted to religious workers each year. 8 U.S.C. § 1153(b)(4); 8 U.S.C. § 1101(a)(27)(C). Visa applicants may be living overseas or in the United States and many individuals who are already present in this country entered on a non-immigrant visa, also known as an R-1 visa. See Id. § 1101(a)(15)(R). Individuals who hold R-1 visas may stay in the United States for up to five years. Id. § 1101(a)(15)(R)(ii). R-1 visa holders must depart after five years unless they seek to "adjust status" prior to their R-1 visa's expiration. If the alien does none of these things, then his or her status will be unlawful. 8 U.S.C. § 1255(c), (k). Further, if the alien accrues a period of unlawful presence of more than 180 days, the alien is statutorily ineligible for adjustment of status. Id. § 1255(k).

The first step in applying for a special immigrant religious worker visa is the submission of a Form I-360 petition by a sponsoring religious organization. The INA provides that, for at least the two-year period immediately preceding the time of

3

application, a special immigrant religious worker must have been a member of a "bona-fide" religious denomination and have been carrying on the vocation of a minister of that religious denomination. Id. § 1101(a)(27)(C).

DHS regulations prescribe a number of additional requirements for eligibility. See 8 C.F.R. 204.5(m). In November 2008, DHS promulgated a final rule amending those regulations so that it could better detect and deter fraud and other abuses in the religious work program. 73 Fed. Reg. 72276 (Nov. 26, 2008). Under the old regulations, persons could qualify for special immigrant religious worker classification if, among other things, they had been working in a qualified religious vocation "continuously (either abroad or in the United States) for at least the two-year period immediately preceding the filing of the [Form I-360] petition." 8 C.F.R. § 204.5(m) (2007). Under the amended rule, if a petitioner's two years of qualifying work experience was performed in the United States, then that work must have been performed "in lawful immigration status." 8 C.F.R. § 204.5(m)(4), (11) (2012).

In addition to filing a Form I-360 petition, an alien seeking to adjust status to that of a lawful permanent resident must apply for adjustment of status through Form I-485. Under the INA, an alien may adjust status if (1) the alien makes an application; (2) the alien is eligible to receive a visa; and (3) a visa is immediately available. 8 U.S.C. § 1255(a). Pursuant to 8 C.F.R. § 245.2(a)(2)(i)(B), special immigrant religious workers may only file a Form I-485 application with an approved Form I-360

4

petition.[2]  Other classes of alien workers may file a Form I-360 petition for a visa and a Form I-485 application for adjustment of status at the same time.

### B. Plaintiffs' Arrival in the United States

Upon SABA's invitation, Mir entered the United States with an R-1 nonimmigrant visa in February 2002.  Pls.' Ex. A.[3]  Mir's R-1 visa was set to expire in early 2007.  Once Mir settled in at SABA, his wife and the couple's two sons joined Mir in the United States, entering on R-2 visas.  Id.  Zahera gave birth to three more sons in 2003, 2005, and 2007; each is a United States citizen.  Pls.' Ex. W.

### C. Plaintiffs' Form I-360 Petitions

On April 11, 2005, SABA filed a Form I-360 petition for Mir, the first step toward his religious worker immigrant visa, so that Mir could continue to serve as SABA's minister on a permanent basis.  Pls.' Ex. C.  This first petition was denied by USCIS, appealed to the AAO, and then vacated and remanded back to USCIS.

---

[2] In 2009, a class of alien beneficiaries of special religious worker visa petitions challenged the validity of 8 C.F.R. § 245.2(a)(2)(i)(B).  The Western District of Washington invalidated the regulation and issued an injunction requiring the government to accept adjustment of status applications from beneficiaries of pending special religious worker visa petitions.  Ruiz-Diaz v. United States, No. C07-1881RSL, 2009 U.S. Dist. LEXIS 131744 (W.D. Wash. June 11, 2009).  In August 2010, the Ninth Circuit reversed the district court's decision and vacated the injunction, holding that the regulation was a reasonable construction of the INA.  Ruiz-Diaz v. United States, 618 F.3d 1055, 1062 (9th Cir. 2010).

[3] Marc Van Der Hout ("Van Der Hout"), attorney for Plaintiffs, filed a declaration in support of Plaintiffs' motion for summary judgment.  ECF 24-2 ("Van Der Hout Decl.").  A number of exhibits are attached to the Van Der Hout Declaration (hereinafter, "Pls.' Exs."). Melissa Leibman ("Leibman"), counsel for Defendants, filed a declaration in support of Defendants' cross-motion for summary judgment.  ECF 25-1 ("Leibman Decl.").  A number of documents are also attached to the Leibman Declaration (hereinafter, "Defs.' Exs.").

Pls.' Ex. F, G, K. On remand, USCIS again denied SABA's first Form I-360 petition based on "unresolved inconsistencies" in the petition concerning Mir's compensation and continued employment status and whether SABA had made Mir a "qualifying job offer." Pls.' Ex. M. The AAO finally affirmed USCIS's denial of the first petition on November 15, 2007 -- over two years after SABA had first filed its petition. Pls.' Ex. O.

In June 2007, while its first Form I-360 petition was pending on appeal, SABA filed a second Form I-360 petition on behalf of Mir. Pls.' Ex. H. By that time, Mir had accrued close to six months of unlawful presence in the United States, as his R-1 nonimmigrant visa had expired earlier that year. On November 26, 2007, USCIS denied SABA's second I-360 petition for the same reasons it denied the first. Pls.' Ex. P. SABA appealed.

In November 2008, while SABA's appeal was pending, DHS amended the visa eligibility regulations to require that qualifying work done in the United States must have been performed in lawful immigration status. 73 Fed. Reg. 72276. On December 16, 2008, the AAO vacated USCIS's denial of SABA's second Form I-360 petition, remanding it to USCIS with instructions to issue a request for evidence and a new decision in accordance with the new regulations. Pls.' Ex. Q. In November 2010, on remand, USCIS denied SABA's second Form I-360 petition for the same reasons it denied the petition in 2007. Defs.' Ex. H. SABA appealed again, but the AAO affirmed USCIS's decision on January 4, 2011. Defs.' Ex. J. The AAO disagreed, in part, with USCIS's findings regarding SABA's job offer, but determined that Mir failed to satisfy the new regulatory requirements promulgated in November 2008. Id. The AAO found that

1  Mir's R-1 nonimmigrant religious worker status had expired on
2  January 1, 2007, five months before SABA had filed his second Form
3  I-360 petition, and that Mir had continued to work as a minister
4  after his R-1 status expired. Defs.' Ex. J at 1471. The AAO
5  concluded: "[SABA] has acknowledged . . . that [Mir] worked without
6  authorization during the two year qualifying period. Under the
7  regulations now in effect at 8 C.F.R. §§ 204.5(m)(4) and (11), we
8  must find that [Mir]'s admittedly unlawful employment cannot
9  qualify him from the classification sought in the present
10 petition." Id. at 1473.

   **D.   Plaintiffs' Applications for Adjustment of Status**

   On June 1, 2007, Mir filed Form I-485 applications for adjustment of status on behalf of himself, his wife, and two of his children. Pls.' Ex. I. Their applications were rejected a few days later because 8 C.F.R. § 245.2(a)(2)(i)(B) required that they hold approved special immigrant visas before filing for an adjustment of status. Pls.' Ex. J. Mir and Zahera filed for an adjustment of status again on August 21, 2009, after the Western District of Washington issued a nation-wide injunction in Ruiz-Diaz, effectively invalidating 8 C.F.R. 245.2(a)(2)(i)(B). Pls.' Ex. R. On January 31, 2011, after the Ruiz-Diaz injunction had been vacated by the Ninth Circuit, USCIS issued a notice of decision to Mir and his family, informing them that it had denied their adjustment of status applications on January 28, 2011. Defs.' Ex. P, S, W, X.

   **E.   Plaintiffs' Departure from and Return to the United States**

On December 25, 2010, with SABA's final appeal of its Form I-360 petition still pending before the AAO, Mir, Zahera, and their three youngest children left the United States to visit Mir's ill mother in India. Pls.' Ex. W. At the time, Mir believed that they would have no problem returning to the United States because they had been granted "advance parole" and a Form I-512L travel document, which were not set to expire until March 16, 2011.[4] Id.

Things did not work out as planned. Ten days after Mir and his family left the United States, the AAO affirmed denial of SABA's second Form I-360 petition. Defs.' Ex. J. Mir claims that, on January 25, 2011, he and his family unsuccessfully tried to check-in for their flight back to the United States. Pls.' Ex. W. The airline allegedly told Mir that the United States Embassy had informed it that he and his family's advance parole had been revoked and that they could not board the plane. Id. On January 31, 2011, USCIS notified Mir and his family that their applications for adjustment had been denied and their advance parole had been terminated. Pls.' Ex. Y.

On March 22, 2011, Plaintiffs filed this action. ECF No. 1 ("Compl."). A few weeks later, the parties filed a joint

---

[4] Mir's Form I-512L stated:

> The bearer departed the United States and intends to return to the United States to resume processing of the adjust of status application. Presentation of the original of this document prior to March 16, 2011 allows Customs and Border Protection (CBP) Inspector at a port-of-entry to parole the named bearer . . . into the United States based upon urgent humanitarian reasons or significant public benefit. . . . Parole is not admission into the United States. . . . Parole into the United States is not guaranteed.

Pls.' Ex. S.

8

stipulation, in which Defendants agreed to facilitate Plaintiffs' return to the United States, and on April 15, 2011, the Court approved the parties' stipulation. ECF Nos. 14, 15 ("Apr. 15, 2011 Order"). Under the stipulation, DHS was to "provide Mr. Mir and his wife all of the rights and process due them under the law, including the Immigration and Nationality Act, upon his return to the United States." Apr. 15, 2011 Order at 2.

Plaintiffs contend that Defendants' actions upon Mir and Zahera's return to the United States violated the terms of the stipulations. On April 25, 2011, Customs and Border Protection officers paroled Mir and Zahera into the United States. The officers also issued Mir and Zahera Notices to Appear, placing them into removal proceedings pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I). Pls.' Ex. at Z. According to the Notice to Appear, Mir and Zahera were removable because they were "not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document." Id.

### F. Plaintiffs' Lawsuit

Plaintiffs' Complaint was filed on March 22, 2011, before Mir and Zahera returned to the United States. The Complaint asserts eleven causes of action: (1) violation of procedural due process -- lack of notice of intent to revoke advance parole; (2) violation of regulations -- lack of notice of intent to revoke advance parole; (3) violation of regulations and due process -- failure to restore Plaintiffs to their prior status and allow them to return to the United States; (4) violation of Plaintiffs' due process right to renew their application for adjustment of status before a neutral immigration judge; (5) violation of equal protection; (6)

9

writ of mandamus -- seeking an order allowing Plaintiffs to return to the United States; (7) violation of the Religious Freedom Restoration Act of 1993; (8) violation of the Administrative Procedure Act ("APA"); (9) ultra vires -- asserting Defendants' 2008 regulations at 8 C.F.R. §§ 204.5(m)(4) and (11) are ultra vires to the organic statute; (10) due process -- asserting Defendants violated Plaintiffs' due process rights by retroactively applying the 2008 regulations to SABA's second Form I-360 petition; (11) estoppel -- alleging, among other things, that Defendants are estopped from denying SABA's second Form I-360 petition based on the retroactive application of the 2008 regulations. FAC ¶¶ 79-120.

Plaintiffs now move for summary judgment on the grounds that: (1) the 2008 amendments to 8 C.F.R. 204.5(m) are invalid and ultra vires to the INA; (2) application of the 2008 amendments to Plaintiffs' Form I-360 petition is impermissibly retroactive; and (3) Defendants violated Plaintiffs' due process rights by revoking Mir and Zahera's advance parole. Defendants have filed a cross-motion for summary judgment, addressing each of these arguments.

### III. LEGAL STANDARD

Entry of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be granted if the evidence would require a directed verdict for the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986). Thus, "Rule 56[] mandates the entry of summary judgment . . . against a party who

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

**IV. DISCUSSION**

    **A. Validity of Amendments to 8 C.F.R. § 204.5(m)(4), (11)**

Plaintiffs argue that Defendants exceeded their authority under the INA by promulgating the November 2008 amendments to 8 C.F.R. § 204.5(m)(4), (11) and, as such, the regulations are now ultra vires to the statute. Pls.' MSJ at 18. Defendants respond that the amended regulation is entitled to Chevron deference since it constitutes a reasonable interpretation of a statutory gap. Defs.' MSJ at 9. The Court agrees with Plaintiffs.

The INA defines a special immigrant religious worker as someone who, among other qualifications, has been "carrying on such vocation, professional work, or other work for at least" two years before a petition is filed. 8 U.S.C. § 1101(a)(27)(C). The

November 2008 regulations provide that, to be eligible for classification as a special immigrant religious worker, an alien must have been working in a qualified religious occupation, "either abroad or <u>in lawful immigration status</u> in the United States, . . . continuously for at least the two-year period preceding the filing of the petition." 8 C.F.R. § 204.5(m)(4) (emphasis added). The amendments further provide that "qualifying experience during the two years immediately preceding the petition[,] . . . if acquired in the United States, must have been <u>authorized under United States immigration law</u>." <u>Id.</u> § 204.5(m)(11) (emphasis added).

The Court reviews whether 8 C.F.R. § 204.5(m)(4), (11) conflicts with the INA under the two-part test set out in <u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984). Under step one of the <u>Chevron</u> analysis, the Court must ask whether Congress has spoken to question at issue or "has explicitly left a gap for the agency to fill." 467 U.S. at 843-44. If Congress has spoken to the issue unambiguously, then the Court must accept that statement as controlling. <u>Id.</u> However, if the statute at issue is either silent or ambiguous, the Court must proceed to step two and consider whether the agency's interpretation is a reasonable and permissible construction of the statute. <u>Id.</u>; <u>Ruiz-Diaz v. United States</u>, 618 F.3d at 1060. Where the agency's interpretation is reasonable, the Court must defer to the agency. <u>Chevron</u>, 467 U.S. at 842-43.

While 8 C.F.R. § 204.5(m)(4), (11) may pass muster under <u>Chevron</u> step one, the Court declines to defer the agency's interpretation because, under <u>Chevron</u> step two, the regulation is inconsistent with the prevailing statutory scheme. Specifically, 8

12

C.F.R. § 204.5(m)(4), (11) cannot be considered reasonable because it is contrary to Congress's explicit mandate in 8 U.S.C. § 1255(k). Section 1255(k) provides that an alien may be eligible for an adjustment of status, even if the alien has engaged in unauthorized employment, so long as the alien has not engaged in unauthorized employment for more than an aggregate period exceeding 180 days. The statute conflicts with 8 C.F.R. § 204.5(m)(4), (11), which prohibits even a single day of unauthorized work in the two-year period immediately preceding a special immigrant worker visa petition.

Defendants argue that there is no tension between 8 U.S.C. § 1255(k) and 8 C.F.R. § 204.5(m)(4), (11) because the former pertains to eligibility for adjustment of status and the latter applies to eligibility for a special immigrant visa. Defs.' Reply at 5. This argument is unavailing because the two eligibility requirements are connected. An alien is only eligible for an adjustment of status if he or she is also "eligible to receive an immigrant visa and is admissible to the United States for permanent residence[.]" 8 U.S.C. § 1255(a). Congress has expressly stated that an alien may work up to 180 days in unauthorized status and still remain eligible for an adjustment of status. Id. § 1255(k). However, under the 2008 amendments to 8 C.F.R. § 204.5, that is no longer the case. If an alien works even one day in unauthorized status, then the alien is ineligible for a special immigrant visa and, consequently, also ineligible for an adjustment of status. Thus, DHS has effectively undercut the eligibility requirements for an adjustment of status set forth by statute.

1  For these reasons, the Court finds that 8 C.F.R. §
2  204.5(m)(4), (11) is ultra vires to the INA and, thus, may not be
3  applied to Plaintiffs.[5]

### B. Plaintiffs' Advance Parole Revocation Claims

Plaintiffs also contend that Defendants violated their due process rights by revoking Mir and Zahera's advance parole without notice and subsequently paroling them into the United States in a manner that prevented them from adjusting their status. Pls.' MSJ at 19-25. Defendants respond that they provided notice and that Mir and Zahera were not prejudiced by the manner in which they were paroled into the United States because, regardless of their parole status, Mir and Zahera were precluded from renewing their adjustment of status applications. Defs.' Reply at 12-15. The Court agrees with Plaintiffs.

Individuals who apply for adjustment of status and whose applications are pending may apply for advance permission to depart and return to the United States. 8 C.F.R § 212.5. Such permission is called advance parole. Under 8 C.F.R. § 1245.2(a)(1)(ii), an immigration judge has jurisdiction to adjudicate a denied application for adjustment of status filed by an arriving alien who enters the country pursuant to the terms of a grant of advance parole. However, an immigration judge otherwise lacks jurisdiction. 8 C.F.R. § 1245.2(a). When DHS wishes to revoke an

---

[5] Plaintiffs also argue that application of the amendments to 8 C.F.R. § 204.5(m) to their Form I-360 petition is impermissibly retroactive because the amendments were promulgated after their petition had been filed. This argument appears to lack merit since the preamble to the final rule states: "All cases pending on the rule's effective date and all new filings will be adjudicated under the standards of this rule." 73 Fed. Reg. at 72285. In any event, the Court need not reach this issue as it has found that the regulation is ultra vires to the INA.

14

1 advance parole that has been previously given, it is required that
2 "parole shall be terminated upon written notice to the alien and he
3 or she shall be restored to the status that he or she had at the
4 time of parole."  8 C.F.R. § 212.5(e)(2)(i).

5 　　　　The Seventh Circuit addressed these regulations under similar
6 factual circumstances in Samirah v. Holder, 627 F.3d 652 (7th Cir.
7 2010).  In Samirah, as in this case, the plaintiff was granted
8 advance parole and a Form I-512L travel document so that he could
9 visit his ill mother outside the United States.  627 F.3d at 654-
10 55.  As in this case, the plaintiff's advance parole was revoked
11 after he departed the United States and he was prohibited from
12 returning.  Id. at 655.  The Seventh Circuit found that the
13 plaintiff was entitled to reenter the United States to pursue his
14 application for adjustment of status.  Id. at 665.  The court
15 reasoned that, under 8 C.F.R. § 212.5(e)(2)(i), the plaintiff was
16 entitled to restoration of status -- specifically, to that of an
17 alien eligible for an adjustment of status.  Id. at 655.  The court
18 rejected the government's arguments that revocation of the
19 plaintiff's advance parole made him inadmissible and that he needed
20 a fresh grant of parole to be readmitted.  Id.  The court stated:

> To require the alien to obtain a fresh grant of parole
> would contradict both the regulation and the form [I-
> 512L] — the form because it is the equivalent of a visa,
> and the regulation because it requires that the bearer's
> status as of when advance parole was granted be restored
> when the parole ends.

25 Id.  Defendants insist that Samirah was wrongly decided, but offer
26 no persuasive argument explaining why the Court should not follow
27 the Seventh Circuit.

In the instant action, Defendants violated Plaintiffs' due process rights in at least two ways. First, in violation of 8 C.F.R. § 212.5(e)(2)(i), Defendants prevented Mir and Zahera from returning to the United States on January 25, 2011, despite the fact that Mir and Zahera's advance parole did not expire until March 16, 2011 and Defendants had not yet provided them with written notice that their advance parole had been terminated. In their papers, Defendants "do not concede" that they barred Mir and Zahera from returning on January 25, 2011 or at any time prior to the notice of revocation issued on January 31, 2011. However, Defendants do not offer any evidence to the contrary. In any event, Defendants do not dispute that they barred Mir and Zahera from reentering the country between January 31, 2011 and April 25, 2011, which gives rise to the second due process violation. Under Samirah, Mir and Zahera were entitled to return to the United States after Defendants revoked their advance parole so that they could renew their applications for an adjustment of status. In violation of Plaintiffs' due process rights, Defendants prevented Mir and Zahera from returning until April 25, 2011, over a month after their advance parole documents had expired. Because Mir and Zahera entered the country on expired parole documents and Defendants refused to restore them to their prior status, Mir and Zahera were barred from renewing their applications for adjustment of status before an immigration judge.

Defendants argue that applying for an adjustment of status is not an immigration status. Defs.' Reply at 13. This argument was expressly rejected by the Seventh Circuit in Samirah. 627 F.3d at 657. The Court declines to reach a different conclusion here.

16

Defendants also argue that even if Plaintiffs had remained inside the United States, they were barred from renewing their applications for adjustment of status because, under 8 C.F.R. § 1245.2(a)(1)(ii), they never established their eligibility for a special immigrant religious worker visa. See Defs.' Reply at 12-13. In light of the Court's findings in Section IV.A. above, Defendants' argument lacks merit. Plaintiffs' petition for a special immigrant religious worker visa was denied under 8 C.F.R. § 204.5(m)(4), (11), which the Court has found to be inconsistent with the INA and, thus, contrary to law. Absent 8 C.F.R. § 204.5(m)(4), (11), Plaintiffs may be eligible for a special immigrant religious worker visa and, consequently, may also be eligible for an adjustment of status.

Accordingly, the Court finds that the manner in which Mir and Zahera were paroled into the United States violated their due process rights.

**V.  CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for summary judgment and DENIES Defendants' cross-motion for summary judgment. The Court finds that the Department of Homeland Security's regulatory amendments at 8 C.F.R. § 204.5(m)(4), (11), requiring the beneficiary of a Form I-360 petition to have been employed either abroad or in lawful immigration status in the United States continuously for at least the two-year period immediately preceding the filing of the petition, are ultra vires to the Immigration and Nationality Act. Accordingly, the application of 8 C.F.R. § 204.5(m)(4), (11) to Plaintiffs' Form I-

360 petition was contrary to law.  The Court further finds that Defendants' failure to restore Plaintiffs to their prior status upon revoking their advance parole was contrary to law and a violation of their due process rights.  The Court ORDERS that Plaintiffs Mir and Zahera's return to the United States on April 25, 2011 shall be deemed to be on their revoked advance parole documents or that Mir and Zahera otherwise be deemed eligible to renew their adjustment status applications  before an immigration judge in the removal proceedings already initiated against them. The accrual of unlawful presence during the duration of this action is deemed stayed since Mir and Zahera's return to the United States on April 25, 2011.

IT IS SO ORDERED, ADJUDGED, AND DECREED.

Dated: February 1, 2012

UNITED STATES DISTRICT JUDGE